IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **DOUGLAS TYLER WOODS,**<br><br>                    Plaintiff,<br><br>vs.<br><br>**ADRIAN HILLIN, PHIL BARNEY, TODD GARDNER,**<br><br>                    Defendants. | **REPORT AND RECOMMENDATION**<br><br>Case No.  2:04cv1011<br><br>Judge Tena Campbell<br><br>Magistrate Paul M. Warner |

      This matter was referred to Magistrate Judge Paul M. Warner by District Judge Tena Campbell pursuant to 28 U.S.C. § 636(b)(1)(B).  Before the court is Adrian Hillin ("Deputy Hillin"), Phil Barney ("Sheriff Barney"), and Todd Gardner's ("Deputy Gardner") (collectively "Defendants") Motion for Summary Judgment [docket no. 57].  A hearing on the motion was held December 19, 2006.  Defendants were represented by Kathleen M. Liuzzi, and Douglas Tyler Woods ("Plaintiff") appeared pro se.  Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties.  Since taking the motion under advisement, the court has further considered the law and facts relating to the motion.  Now being fully advised, the court recommends that Defendants' Motion for Summary Judgment be denied.

## I. BACKGROUND

**Defendants' relevant version of events:**[1]

On May 17, 2004,[2] Deputy Hillin was on stationary patrol and operating radar on Highway 50 in Sevier County, Utah, at milepost 56. Deputy Hillin observed a 1982 green Volkswagen Vanagon traveling 67 miles per hour in a 65-miles-per-hour zone. Deputy Hillin noticed that as the vehicle passed him, the driver was staring directly at him with a strange look on his face. He also noticed that the driver turned completely around in his seat to look at him as he passed Deputy Hillin's patrol car.

Deputy Hillin stopped the vehicle with the intention of giving the driver a warning for speeding. As he exited his patrol car and approached the vehicle, he observed that it was impossible to see into the rear area of the vehicle due to curtains and various items in the windows. Deputy Hillin noticed that the driver, Plaintiff, was acting extremely nervous and paranoid. Deputy Hillin asked for Plaintiff's destination, license, and registration. Deputy Hillin ran a computer check on Plaintiff's information, which indicated that Plaintiff had a lengthy criminal history, had used aliases, and that his birth date did not match the birth date listed on his license.

Deputy Hillin returned Plaintiff's information, gave him a verbal warning for speeding, and told him he was free to leave. Based on Plaintiff's criminal history, use of aliases, birth date discrepancy, and strange behavior, Deputy Hillin asked Plaintiff for his consent to search his

---

[1]Defendants' relevant version of events is taken from Defendants' Memorandum in Support of Motion for Summary Judgment [docket no. 58].

[2]Deputy Hillin's Affidavit and Defendants' Memorandum in Support of Motion for Summary Judgment both state that the events occurred on May 18, 2004, but the date on the pre-booking sheet is May 17, 2004.

vehicle and informed him that he had the right to refuse. Plaintiff was indecisive about whether Deputy Hillin could search the vehicle. Deputy Hillin took Plaintiff's indecision as a "no" and called for a canine unit to perform a drug sniff outside the vehicle. Plaintiff begged Deputy Hillin not to search the vehicle and became increasingly agitated. Plaintiff then exited the vehicle, and Deputy Hillin decided to handcuff him because of his nervous behavior.

Prior to the canine unit's arrival, Plaintiff told Deputy Hillin that there was a marijuana pipe in the vehicle. Deputy Hillin then informed Plaintiff of his Miranda rights. When the canine unit arrived, Deputy Gardner, the canine's handler, directed the canine to sniff outside the vehicle. The canine alerted to the back of the vehicle. The canine then jumped through the open passenger door and alerted to a dresser inside the vehicle. Deputy Hillin searched the dresser and found a baggie containing marijuana, a marijuana pipe, and drug paraphernalia. During the inventory search of the vehicle, Sheriff Barney stopped by the scene for one minute. Plaintiff was taken to the Sevier County Jail and charged with DUI metabolite, possession of marijuana, and possession of drug paraphernalia.

**Plaintiff's relevant version of events:**[3]

On May 17, 2004, Plaintiff was traveling through Sevier County, Utah, on his way home to Colorado in his 1982 Volkswagen Vanagon. Plaintiff claims that his vehicle has a top speed of 59 miles per hour on level ground but that because he was traveling on a downgrade when he approached and passed Deputy Hillin, he was able to get the vehicle up to 64 miles per hour and was thus within the posted speed limit of 65 miles per hour.

Plaintiff states that as he passed Deputy Hillin, Plaintiff merely glanced in his direction

---

[3] Plaintiff's relevant version of events is taken from Plaintiff's Complaint [docket no. 3] and Motion to Proceed to Trial [docket no. 59], which the court is treating as both an opposition memorandum and affidavit.

and did not completely turn around as Deputy Hillin alleged.  Plaintiff also states that he was wearing sunglasses that day so Deputy Hillin could not have seen his facial expression in less than two seconds from across the highway.

After running a computer check on Plaintiff's information, Deputy Hillin asked Plaintiff if he could search the vehicle.  Plaintiff told Deputy Hillin, "no."  Plaintiff states that Deputy Hillin never informed him that he was free to leave.  In fact, Plaintiff states that Deputy Hillin ignored Plaintiff's numerous statements that he would like to be on his way.  Plaintiff admits that he does have a criminal record consisting of one felony, one misdemeanor, and one petty offense conviction.  Deputy Hillin repeatedly asked for permission to search the vehicle and then threatened to call in a drug sniffing dog if Plaintiff refused to allow him to search the vehicle. Plaintiff asked Deputy Hillin what his probable cause was to search the vehicle, but Deputy Hillin ignored him and called in the canine unit.

## II.  STANDARD OF REVIEW

A motion for summary judgment under rule 56 of the Federal Rules of Civil Procedure is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56©.  "As a matter of law, the movant must show entitlement to summary disposition beyond all reasonable doubt." *Alta Health Strategies, Inc. v. Kennedy*, 790 F. Supp. 1085, 1089 (D. Utah 1992) (quotations and citations omitted).  Thus, the movant bears an initial burden to demonstrate an absence of evidence to support an essential element of the nonmovant's case.  If the movant carries his initial burden, the burden then shifts to the nonmovant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no *genuine* issue of *material* fact." *Id.* at 247-48. "Where different inferences can be drawn from conflicting affidavits, depositions and pleadings, summary judgment should not be granted." *Alta Health Strategies, Inc.*, 790 F. Supp. at 1090 (quotations and citations omitted).

### III.  DISCUSSION

Defendants assert that they are entitled to qualified immunity. Unlike other types of cases at the summary judgment stage, the plaintiff bears a "heavy two-part burden" after a defendant asserts a qualified immunity defense. *See Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000). "Plaintiff must first establish that 'the facts alleged [taken in the light most favorable to the nonmoving party] show the officer's conduct violated a constitutional right.'" *Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2005) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, Plaintiff must demonstrate that the right was clearly established at the time of the alleged constitutional violation. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). "Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Scull*, 236 F.3d at 595 (quoting *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001).

Addressing the first prong of the qualified immunity analysis, Defendants contend that Deputy Hillin's traffic stop of Plaintiff did not violate his constitutional rights because Plaintiff committed a traffic violation. The "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of" the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-10 (1996). The decision to stop an automobile "is reasonable under the Fourth Amendment where an officer has (1) probable cause to believe that a traffic violation occurred or (2) a reasonable articulable suspicion that 'this particular motorist violated any one of the multitude of applicable traffic and equipment regulations of the jurisdiction'" *United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999) (citations omitted) (quoting *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc)).

Here, Plaintiff contends that he was not committing any traffic violations and that he was driving under the posted speed limit when he passed Deputy Hillin. Accordingly, Plaintiff asserts that the traffic stop, from its inception, was unreasonable under the Fourth Amendment. Viewing the facts in a light most favorable to Plaintiff, the court finds that Deputy Hillin's stop of Plaintiff's vehicle may have violated Plaintiff's clearly established right to be free from unreasonable seizure. Thus, Plaintiff has established both prongs of the qualified immunity analysis: (1) Deputy Hillin's conduct may have violated a constitutional right and (2) the right was clearly established at the time of the violation. Therefore, the court finds that Defendants are not entitled to qualified immunity.

Furthermore, Defendants have failed to "show entitlement to summary disposition beyond all reasonable doubt." *Alta Heath Strategies, Inc.*, 790 F. Supp. at 1089. It is Defendants' burden to demonstrate that there are no genuine issues of material fact and that they

are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). However, at the hearing, counsel for Defendants basically asked the court to weigh Deputy Hillin's testimony more favorably than Plaintiff's, thereby essentially admitting, although not explicitly, that summary judgment was inappropriate in this matter. Counsel for Defendants also argued that if the court found summary judgment to be inappropriate for the initial cause of action, i.e., the initial stop, it should find that summary judgment is appropriate for at least some of the claims. But because all of the other claims stem from the initial stop and because the evidence is such that a reasonable jury could find that Plaintiff was not speeding or committing any other traffic violations when Deputy Hillin pulled him over, the court finds that this matter is not suitable for summary disposition.

As a final matter, the court recommends that counsel be appointed to represent Plaintiff. Plaintiff was granted in forma pauperis status by the court pursuant to 28 U.S.C. § 1915 (the "in forma pauperis statute"). While Plaintiff has not moved the court for appointed counsel, under the in forma pauperis statute, "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). It appears that Plaintiff "has a colorable claim but lacks the capacity to present it." *Miller v. Glanz*, 948 F.2d 1562, 1572 (10th Cir. 1991). Because the appointment of counsel under the in forma pauperis statute is within the sound discretion of the district court, this court recommends that the district court appoint counsel to represent Plaintiff in this matter.

## IV.  RECOMMENDATION

IT IS HEREBY RECOMMENDED that Defendants' Motion for Summary Judgment [docket no. 57] be DENIED. It is also RECOMMENDED that counsel be appointed to represent Plaintiff in this matter. Copies of the foregoing report and recommendation are being mailed to

all parties who are hereby notified of their right to object.  The parties must file any objection to the Report and Recommendation within ten days after receiving it.  Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 9th day of January, 2007.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge